# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

ROBERTO CARMONA

(AKA: ROBERTO CONTRERAS)

Petitioner,

v.

UNITED STATES OF AMERICA

Respondent.

# PETITION FOR WRIT OF ERROR *CORAM NOBIS* OR WRIT OF *AUDITA QUERELA* PURSUANT TO 28 U.S.C. § 1651 (A) OR AMENDED PETITION FOR WRIT OF *HABEAS CORPUS* PURSUANT TO 28 U.S.C. § 2241 (C)/§ 2254 And SWORN DECLARATION IN SUPPORT OF MOTION/PETITION

COMES NOW the Movant/Petitioner, ROBERTO CARMONA (AKA: ROBERTO CONTRERAS), who herewith files his Sworn Declaration, Motion to Vacate Conviction Under Petition for Writ of Error Coram Nobis or Writ of Audita Querela pursuant to 28 U.S.C. § 1651 (a) or Amended Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2241 (c) (3)/§ 2254 and Memorandum of Law (attached as a separate document).  In support, Mr. Carmona states as follows:

**STATEMENT OF FACTS AND PROCEEDINGS**:

On March 31, 1999, 35 years of age, Mr. Carmona was sentenced to "three years to life in prison" following a guilty plea to an offense of Criminal Possession of a Controlled Substance in violation of New York State Penal Law Section 220.18, a Class A-II Felony.  See, Decision & Order in 1998-512, Supreme Court of the State of New York, County of Rockland, Attached to separately filed Memorandum as "Memorandum Exhibit" A.  Because of the guilty plea and conviction in the criminal case, Mr. Carmona subsequently was deported from the United States following a hearing before the United States Immigration and Naturalization Service, but the sentence imposed by the Court does not require deportation as part of the punishment.

At the time of Mr. Carmona's plea, he was not a citizen of the United States, but on September 18, 2004, in Onondaga County, Syracuse, New York, Mr. Carmona (Roberto Contreras Lebran) and Cindy Mamm formally were married at Dewitt Community Church, and they now have four American-born children.  Mr. Carmona has been the sole support of his family, and they care for each other deeply.

In his Plea Agreement with the Government, Mr. Carmona had continued to maintain that he did not know that there were drugs in the vehicle at the time of his arrest.  The PreSentence Report reflected that Mr. Carmona was under-educated; spoke little English; understood little English, and he had had no prior arrests or convictions.  Frightened by the police intervention, when the other individual in the vehicle bolted and ran.  Mr. Carmona reacted to that man's sudden flight, and he "ran, and there was a quantity of drugs recovered in the car, and that's what this is about."  See, Sentencing Transcript, Attached as Memorandum Exhibit B at 5.  At sentencing, County Court Judge William Kelly, told Mr. Carmona that if he persisted in that claim, the court could not continue with sentencing, but it would permit Mr. Carmona to take back his guilty plea and proceed to trial.  Memorandum Exhibit B at 3.  However, there were serious potential consequences to electing trial, and Mr. Carmona apparently decided to admit guilt in light of the Government's "recommendation of a minimum sentence of three years to life" or going to trial and facing the possibility, if convicted, of 15 years in prison. Memorandum Exhibit B at 3.  The record does not reflect that Mr. Carmona was provided with or exercised his right to consult with his attorney at that time, but it does reflect that Mr. Carmona needed an interpreter and, in fact, spoke very little English. Memorandum Exhibit B at 4.  The Presentence also noted that Mr. Carmona apparently was "somewhat confused … and very remorseful."  Memorandum Exhibit B at 5.  Mr. Carmona also

was advised of his right to appeal, and Judge Kelly mentioned that the "Notice of Appeal is in English, but I will have the official court interpreter make sure that the Defendant understands it, and will we provide something from our office in Spanish." Memorandum Exhibit B at 6-8.  It must be emphasized that although the Court clearly recognized Mr. Carmona's impediments regarding the consequences of going forward with a guilty plea and with Mr. Carmona's limited understanding of the English language and of the proceedings, the record is entirely silent on the essential consequence of <u>deportation</u>.  No one, not Court, Interpreter, Defense Counsel, Prosecutor, U.S. Marshal or anyone else in that courtroom at sentencing, ever advised Mr. Carmona that one of the potential consequences of a conviction for drug possession was deportation.

At the time of sentencing, Mr. Carmona's attorney, Elizabeth O'Connor, had been advised previously by Mr. Carmona of his family ties and obligations to his wife and children.  However, none of this was brought before the Court in mitigation of sentence.  In addition, the Sentencing Transcript is entirely silent as to possible immigration consequences that Mr. Carmona would suffer when convicted of the underlying crime that, under both statute and immigration law, would be considered both a crime of moral turpitude and an aggravated felony that guaranteed that Mr. Carmona would be deported away from his wife and family and from this country.

Nonetheless, even at the time prior to and during his plea, when there was still time to act to mitigate the possibility of a deportable plea and sentence, Mr. Carmona was not advised by either his counsel or by the Court that his plea would have negative immigration consequences. *(See Sworn Declaration of Roberto Carmona [aka Roberto Contreras] annexed hereto as Memorandum Exhibit* D*).*  Had Mr. Carmona been aware of the negative immigration consequences of his plea to include deportation from the United States, a permanent bar to re-entry to the United States, denial of naturalization of citizenship to the United States and denial of other civil liberties, he would have rejected the District Attorney's plea offer and insisted instead on a trial on the charges in the Indictment.

Mr. Carmona was provided a court-appointed lawyer, Elizabeth O'Connor, Esq. who, unknown to Mr. Carmona, not only suffered from ignorance of the law relative to deportation and the potential consequences of an "aggravated felony" conviction, but Ms. O'Connor was "sleeping with the enemy."  Attorney O'Connor was acting to defend Mr. Carmona and, at the same time, acting to cross-examine a Government witness who would be called to testify against Mr. Carmona. Substantial questions of conflict that were not known by Mr. Carmona until after his conviction arise from the record, including but not limited to, questions as to Ms. O'Connor's secret intimate romantic relationship with a police officer who was involved in the case.

The count with which Mr. Carmona was charged, pleaded guilty to and was convicted and sentenced, as described by the Government, is classed as an "aggravated felony " under 8 U.S.C. § 1101 (a) (43) (N).  Section 8 U.S.C. § 237 (a) (2) (A) states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."  An aggravated felony also renders Mr. Carmona ineligible for bond; ineligible for virtually every type of relief from deportation and ineligible for any plausible future opportunity of re-entering the United States to live with his wife and American-born children.

The facts and the record reveal that Mr. Carmona was not fully advised of the charges against him, of the burden of proof on the Government or of what options were available to the defense to prove or disprove the case and/or to negotiate a plea that would avoid an aggravated felony.  Mr. Carmona was not told by anyone of possible options available to him, or even whether those options would not be made available by the Government, and his counsel never had any enlightened discussion with Mr. Carmona about the possibility of attempting to negotiate a plea agreement to charges that would not be classed as aggravated felonies.  Mr. Carmona's attorney never provided information to enable him to understand either the immigration consequences or other ramifications and consequences of conviction following a trial versus opportunities that could be available under a well-negotiated and well-constructed plea agreement nor did she reveal her relationship to the police officer

in the case—a relationship that, at the very least, would have triggered a hearing, removal from the case and possible sanctions owing to her conflict of interest.

The record reveals that Mr. Carmona was never able to make meaningful use of these opportunities because his attorney demonstrated little to no knowledge of applicable immigration law; had no incentive to help Mr. Carmona and Mr. Carmona was not fluent, or even marginally conversant, in English.

Mr. Carmona appealed his conviction and sentence, and the appellate court denied that appeal.

On March 9, 2012, Mr. Carmona filed a motion for post-trial relief under Article 440 of New York's Criminal Procedure Law seeking to vacate the judgment imposed by the trial Court based upon deprivation of his State and Federal Constitutional Right to Counsel, due to the ineffectiveness of his trial counsel regarding possible immigration consequences of his plea. In its Decision and Order, Memorandum Exhibit A, herein, the Supreme Court of the State of New York opined that "[n]ormally, the failure of defense counsel to apprise the defendant of the potential immigration consequences of his guilty plea does not rise to the level of ineffective assistance." (citations omitted), Memorandum Exhibit A at 2.  Relying on these cases, and perhaps on the fact that Mr. Carmona

had never before known about or made any statement about the actions of his trial counsel, the Court determined that there had not "been an insufficient showing of an affirmative misrepresentation." Memorandum Exhibit A at 2. The New York Supreme Court then cited to *Padilla v. Kentucky,* 130 S.Ct. 1473, 1483 (2010) that a defense attorney has an expanded duty to advise a client regarding immigration consequences. Memorandum Exhibit A at 3.

Despite the total absence of any record showing whether Mr. Carmona had been advised, by anyone, of deportation as a possible consequence of his conviction; the New York Supreme Court found that Mr. Carmona "failed to demonstrate that his pending deportation was a *per* se result of this conviction;" that Mr. Carmona failed to "satisfy the second prong of the *Strickland* test by demonstrating prejudice" even in light of Mr. Carmona's claim that "if properly advised, he would have gone to trial," the Court concluded that Mr. Carmona's Article 440 Motion to Vacate owing to ineffective assistance of counsel, should be denied "[g]iven the extremely favorable plea bargain and the strength of the case against him, the defendant has failed to establish prejudice." Memorandum Exhibit A at 3.

On June 25, 2018, Mr. Carmona filed a Motion to Vacate in the

County Court alleging that Mr. Carmona did not receive effective assistance of counsel from his trial counsel; Mr. Carmona's attorney failed to render accurate advice of the consequences of conviction in a criminal proceeding involving a crime considered an aggravated felony; Mr. Carmona was prejudiced; Mr. Carmona's attorney, Ms. O'Connor, was representing Mr. Carmona while suffering under a fatal conflict, and she did not effectively represent Mr. Carmona.   Referencing the Supreme Court of New York's previous Decision and Order dated April 19, 2012 (Memorandum Exhibit A, herein), the County Court denied the Motion on October 15, 2018 because the "prior motion raised the issue of ineffective assistance of counsel. The allegations in this motion easily could have been included in that prior motjon [*sic*]. C.P.L. §440.10(3)(c)." Memorandum Exhibit C at 3.

Mr. Carmona has exhausted all available remedies in the State of New York.  Mr. Carmona's last pleading resulted in the Order of October 15, 2018 (Memorandum Exhibit C) that was filed less than one year ago.  Whether this Court treats the instant filing as a Petition for Writ of Coram Nobis, § 2241, § 2254 or other suggested jurisdictional basis, the issues within Mr. Carmona's present application to this Court have been properly exhausted and his instant application is timely.

**JURISDICTION:**

1. Writ of Error *Coram Nobis*

      Mr. Carmona properly is proceeding by Petition for Writ of Error *Coram Nobis* because he has served the imposed custodial sentence and was deported from the United States. *United States v. Peter,* 310 F.3d 709, 712 (11th Cir. 2002).

      Issuance by the Federal District Court of a writ of error *coram nobis* is authorized by the All Writs Section, 28 U.S.C. § 1651 (a); the power to issue the writ comprehends the power of the District Court to grant the petition in the nature of *coram nobis*.   Chapter 28 U.S.C. § 2254 is inapplicable since Mr. Carmona no longer is in custody serving the sentence imposed by this Court nor is he alleging that the sentence imposed by this Court was imposed in violation of the United States Constitution.  Mr. Carmona was deported from the United States, and  deportation, loss of family and the real potential for harm or loss of life were he required to remain in Dominican Republic. **Family, wife kids. Family can't move there because Children don't speak Spanish. More reasons  be creative  when he went there, what's happened, why he can't stay.  Be specific STEVE – ANY CHANCE OF A COMNFERENCE CALL WITH HIM AND YOU TRANSLATE AND I'LL ASK YOU THE QUESTIONS?**

At least as early as 1922, American courts have characterized deportation as a "loss of all … that makes life worth living" that will permanently and irreparable alter a person's life. *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922). The result of the conviction and sentence in this Court persists even though the custodial sentence and periods of supervisory release have been served, and under 28 U.S.C. § 1651 (a) the power still exists with the Court to remedy the possibility of constitutional violations of such magnitude as to have deprived Mr. Carmona of due process and a fair trial. See, *United States v. Morgan*, 360 U.S. 502 (1954), *Foont v. United States*, 93 F.3d 76 (2nd Cir. 1996). In *United States v. Morgan*, the Supreme Court held that *coram nobis* was still available in federal court for criminal cases. See *Morgan*, 346 U.S. 502, 512 (1954).

*Coram nobis* relief is available only if Mr. Carmona can demonstrate that there are continuing legal consequences as a result of his conviction, and his deportation stands as a viable "legal consequence." Mr. Carmona will demonstrate that he is suffering from continuing legal consequences and civil disabilities as a result of the conviction, sentence and deportation in his case. See, *e.g.*, *United States v. Morgan*, *supra*; *United States v. Osser*, 864 F.2d 1056 (3rd Cir. 1988); *United States v. Keane*, 852 F.2d 199 (7th Cir. 1988); *United States v. Hay*, 702 F.2d 572 (5th Cir. 1983) (remanded *coram nobis* petition to provide Hay the opportunity to demonstrate sufficient collateral consequences to justify relief, in that case, that

Hay's federal sentence, which was served, might adversely impact his chances for state parole).

The *coram nobis* requirement refers to civil disabilities; there is no requirement in case law that those disabilities must attain a constitutional status. See, *Lewis v. United States*, 455 U.S. 55 (1980).  In fact, the United States Congress recognized that, with one exception, deportation is not an acceptable consequence under 8 U.S.C. § 1253 (h) where an alien's life or freedom would be threatened by deportation. See, 8 U.S.C. § 1253 (h) (1992).  Congress also has recognized that deportation should be prohibited to avoid physical harm, severe economic disadvantage and deprivation of liberty, food, housing, employment or other essentials of life.  See *Amending the Immigration and Nationality Act,* H.R. REP. NO. 1452, 95th Cong., 2d Sess. 5 (1978).  In 2015, there seemed to be a congressional desire to see that the interests of deportable aliens are not abandoned in our country—under present suggestions of immigration enforcement, that might no longer be the congressional intent motivating reform, but Mr. Carmona cannot believe that even this Congress would abrogate the spirit of immigration law that helped create such a diverse nation.

In *United States v. Keane*, 852 F.2d at 203, Judge Easterbrook wrote:

When holding in *Morgan* that *coram nobis* may be used to avoid federal criminal convictions, the Supreme Court observed, 346 U.S. at 512-13, 74 S.Ct. at 253, that the writ is valuable to bring to an end what may be substantial civil disabilities attached to criminal convictions. These include loss of the rights to vote, hold occupational licenses, bear arms, [remain in the country of residence of one's lawful husband]; criminal convictions also may lead to enhanced penalties [for even minor] future offenses. The future effects may call for a fresh look at the conviction. Just as a continuing civil wrong not beyond redress because its genesis is old, see *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 3006-07, 92 L.Ed.2d 315 (1986), so the ongoing effects of a criminal conviction justify the allocation of the judicial resources necessary to take a fresh look….Many courts therefore have held that *coram nobis* may be employed of and only if the petitioner is suffering disabilities unique to criminal convictions. E.g., *United States v. Hays*, *supra*; *Puente v. United States*, 676 F.2d 141, 145 n. 2 (5th Cir. 1982). We agree with this approach, which reflects the rules of finality ordinarily applicable while appreciating that the special disabilities criminal convictions may bring justify additional scrutiny in an effort to curtail any lingering effects of error.

The general scope of a petition for writ of error *coram nobis*, or motion of the same nature, is to bring before a court for review or modification a judgment previously rendered that court. There must be some error of fact and not of law affecting substantially the validity and regularity of the proceedings, which was not brought into issue at the trial. Such motion or petition is an extraordinary and residual remedy to correct or vacate a judgment, and it is an attack on a judgment of conviction, valid on its face, but defective by reason of facts outside the record, which, without fault of the defendant, deprived him of part of his constitutional right to a fair trial. 24 C.J.S., Criminal Law, 1606 (2), pp. 666-667. A writ of error *coram nobis* is not an appellate remedy. The purpose of this writ is not to authorize a court

to review its opinion but only to vacate some adjudication made by the court.  In decding whether to grant the writ, courts have used a three-part test: a petitioner must

1. explain his failure, if any, to seek relief from judgment earlier,

2. demonstrate continuing collateral consequences from the   conviction, and

3. prove that the error is fundamental to the validity of the judgment.

A writ of *coram nobis* is issued once the petitioner is no longer in custody. Its legal effect is to vacate the underlying conviction.  A petition for a writ of error *coram nobis* is brought to the court that convicted and sentenced the defendant and is limited to cases in which a "fundamental error" or "manifest injustice" has been committed.  A *coram nobis* petition applies to persons who have already been convicted of a crime and have served their sentence and seek to restore, so far as possible, the petitioner to a pre-conviction state.

The case now before this Court is an example of the proper use of a petition for writ of *coram nobis*.  For example, this case is one where Mr. Carmona agreed to guilty, but he was not informed and did not realize fully the options available to him to try to negotiate a plea that did not have the disabling consequences mentioned herein and in Mr. Carmona's Sworn Declaration.  Mr. Carmona did not comprehend

the consequences of conviction owing to many factors including, but not limited to, the ineffectiveness his attorney, language and cultural difficulties and fear for himself and his family.  Nor did Mr. Carmona understand the burdens of proof, his options had there been a negotiated plea or the full spectrum of consequences resulting from conviction following the plea. Obviously, the prosecutor was aware of the consequences, probably law enforcement personnel knew, and Mr. Carmona's should certainly have been aware of the full consequences or should not have been advising him. Like a person charged with a sex crime, where lifetime registration as a sex offender is the result of a plea agreement and this fact is withheld from a defendant, he now is prejudiced in that had he known the fact of lifetime registration as a sex offender, he would not have pleaded guilty. The writ of *coram nobis* can be used to overturn such a conviction.

2. Writ of *Audita Querela*

The writ of *audita querela* may not be applicable here, but generally it is available with respect to criminal convictions, and Mr. Carmona alleges the jurisdiction of the Court and requests consideration under this provision in the event it is or becomes an avenue for relief in his case.  See, *United States v. Holder*, 936 F.2d 1 (1st Cir. 1991), cited in *United States v. LaPlante*, 57 F.3d 252, 253 (2nd Cir. 1995).  *Audita querela* may be available where there is a legal, as contrasted to an

equitable, objection to a conviction that has arisen subsequent to the conviction and that is not re-dressable pursuant to another post-conviction remedy. *Holder*, 936 F.2d at 5. See also, *United States v. Miller*, 599 F.3d 484, 488 (5th Cir. 2010), *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004), *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002), *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996), *United State v. Reyes*, 945 F.2d 862 (5th Cir. 1991); *United States v. Ayala*, 894 F.2d 425 (D.C. Cir. 1990); *United States v. Kimberlin*, 675 F.2d 866 (7th Cir.), *cert. denied*, 456 U.S. 964 (1982).

3. 28 U.S.C. § 2241 (c) (3) provides that

(c) The writ of habeas corpus shall not extend to a prisoner unless …

(3) He is in custody in violation of the Constitution or laws or treaties of the United States.

## JURISDICTION, ERROR AND DEPORTATION:

In cases where an error cannot be gleaned fully from the record, a post-trial motion to vacate the plea is the proper method of application for post-trial relief. "A post-trial motion to vacate a plea is only warranted when the error is not apparent from the record." *People v. Angelicas,* 518 N.Y.S. 2D 784, 786 (1987).

In New York state courts, a §440.10 motion is the proper application for relief when a defendant alleges an off-the-record problem or error or misunderstanding on his part. *See People v. Wetmore,* 379 N.Y.S. 2d 144 (App. Div. 2nd Dep't 1976) ("where a defendant alleges an off-the-record sentence promise, or a misunderstanding on his part at the time of sentencing as to the date of his release *(citation omitted),* the proper vehicle for relief is a motion to vacate the judgment pursuant to CPL §440.10 and §440.30). In federal courts, because Mr. Carmona has served the imposed custodial sentence and he has completed service of three one year periods of "unsupervised" supervised release following deportation, Mr. Carmona would be required to proceed by Petition for Writ of Error *Coram Nobis.* *United States v. Peter,* 310 F.3d 709, 712 (11th Cir. 2002). Jurisdiction is appropriate in this Court.

Whether in a State of New York or United States court, an unpreserved sentencing or guidelines error is reviewed for plain error. That means: (1) there must be an error; (2) the error must be plain; (3) the error must affect the defendant's substantial rights; and (4) the error must affect the fairness, integrity, or public reputation of the judicial proceedings. In the case of *Rosales-Mireles v. United States*, ___ U.S. ___ (2018) (Case 16-9493) (decided June 18, 2018), the United States Supreme Court held that where a plain miscalculation or error in the sentencing range exists and affects a defendant's substantial rights, the sentencing

court or appellate court must exercise its discretion and vacate the previously imposed sentence—even if the error is not preserved at the time of sentencing. *Rosales-Mireles, id,* addressed the fourth factor, above, and held that in the ordinary case, when the first three factors are satisfied, the fourth factor will also be satisfied. In 2016 the Supreme Court had decided *Molina-Martinez v. United States*, 578 U.S. ___ (2016), and addressed the third prong, above, and held that reliance on a requirement that defendants show "additional evidence" to show substantial harm arising from incorrect sentencing guidelines is impermissible. Based on these Supreme Court's decisions, it is clear that even an unpreserved sentencing or guidelines error ordinarily will be reversible if the first two prongs of the test, above, are satisfied.

In *Molina-Martinez v. United States, id,* the Supreme Court said that, for example, a court of appeals "can consider a sentence's substantive reasonableness only after it ensures that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." Mr. Carmona suggests that there can be no greater error than if the sentencing court failed to advise an un-knowing defendant of the criminal and civil consequences of pleading guilty to a crime that not only will impact his liberty but also will mandate his removal from his country and all he holds dear. In *Molina-Martinez, supra*, "[i]f a district court cannot properly determine whether … a sentence is "sufficient, but not greater

than necessary," 18 U.S.C. § 3553(a), the resulting sentence does not bear on the reliability that would support a presumption of reasonableness…, [a]nd regardless of its ultimate reasonableness, a sentence that lacks reliability because of unjust procedures may well undermine public perception of the proceedings."

Mr. Carmona continues to suffer from deportation that he did not know would happen if he pleaded guilty before this court.  Mr. Carmona suffers from the loss of his family and from the real potential for harm or loss of life were he required to remain in **Dominican Republic.   THIS NEEDS TO ALSO GO INTO CARMONA'S SWORN DECLARATION**

At least as early as 1922, American courts have characterized deportation as a "loss of all … that makes life worth living" that will permanently and irreparably alter a person's life. *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922). The result of the conviction and sentence in this Court persists even though Mr. Carmona has served the custodial sentence and periods of supervisory release, but the power still exists with the Court to remedy the constitutional violations of such magnitude as to have deprived Mr. Carmona of due process and a fair trial.  See, *United States v. Morgan*, 360 U.S. 502 (1954), *Foont v. United States*, 93 F.3d 76 (2nd Cir. 1996).  The United States Congress recognized that, with one exception, deportation is not an acceptable consequence where an alien's life or freedom would

be threatened by deportation. See, 8 U.S.C. § 1253 (h) (1992). Congress also has recognized that deportation should be prohibited to avoid physical harm, severe economic disadvantage and deprivation of liberty, food, housing, employment or other essentials of life. See *Amending the Immigration and Nationality Act,* H.R. REP. NO. 1452, 95th Cong., 2d Sess. 5 (1978). In 2015, there seemed to be a congressional desire to see that the interests of deportable aliens were not abandoned in our country—under present suggestions of immigration enforcement, that might no longer be the congressional intent motivating reform, but Mr. Carmona cannot believe that even this Congress would abrogate the spirit of immigration law that helped create such a diverse and mighty nation.

## JURISDICTION, ERROR AND DEPORTATION:

In cases where an error cannot be gleaned fully from the record, a post-trial motion to vacate the plea is the proper method of application for post-trial relief. "A post-trial motion to vacate a plea is only warranted when the error is not apparent from the record." *People v. Angelicas,* 518 N.Y.S. 2D 784, 786 (1987).

In New York state courts, a §440.10 motion is the proper application for relief when a defendant alleges an off-the-record problem or error or misunderstanding on his part. *See People v. Wetmore,* 379 N.Y.S. 2d 144 (App. Div. 2nd Dep't 1976) ("where a defendant alleges an off-the-record sentence promise, or

20

a misunderstanding on his part at the time of sentencing as to the date of his release *(citation omitted),* the proper vehicle for relief is a motion to vacate the judgment pursuant to CPL §440.10 and §440.30).  In federal courts, because  Mr. Carmona has served the imposed custodial sentence and he has completed service of three one year periods of "unsupervised" supervised release following deportation, Mr. Carmona would be required to proceed by Petition for Writ of Error *Coram Nobis*. *United States v. Peter,* 310 F.3d 709, 712 (11th Cir. 2002).   Jurisdiction is appropriate in this Court.

Whether in a State of New York or United States court, an unpreserved sentencing or guidelines error is reviewed for plain error.  That means: (1) there must be an error; (2) the error must be plain; (3) the error must affect the defendant's substantial rights; and (4) the error must affect the fairness, integrity, or public reputation of the judicial proceedings.  In the case of *Rosales-Mireles v. United States*, ___ U.S. ___ (2018) (Case 16-9493) (decided June 18, 2018), the United States Supreme Court held that where a plain miscalculation or error in the sentencing range exists and affects a defendant's substantial rights, the sentencing court or appellate court must exercise its discretion and vacate the previously imposed sentence—even if the error is not preserved at the time of sentencing. *Rosales-Mireles, id,* addressed the fourth factor, above, and held that in the ordinary case, when the first three factors are satisfied, the fourth factor will also be

satisfied.  In 2016 the Supreme Court had decided *Molina-Martinez v. United States*, 578 U.S. ___ (2016), and addressed the third prong, above, and held that reliance on a requirement that defendants show "additional evidence" to show substantial harm arising from incorrect sentencing guidelines is impermissible.  Based on these Supreme Court's decisions, it is clear that even an unpreserved sentencing or guidelines error ordinarily will be reversible if the first two prongs of the test, above, are satisfied.

In *Molina-Martinez v. United States, id,* the Supreme Court said that, for example, a court of appeals "can consider a sentence's substantive reasonableness only after it ensures that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range."  Mr. Carmona suggests that there can be no greater error than if the sentencing court failed to advise an un-knowing defendant of the criminal and civil consequences of pleading guilty to a crime that not only will impact his liberty but also will mandate his removal from his country and all he holds dear.  In *Molina-Martinez, supra*, "[i]f a district court cannot properly determine whether … a sentence is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), the resulting sentence does not bear on the reliability that would support a presumption of reasonableness…, [a]nd regardless of its ultimate reasonableness, a sentence that lacks reliability because of unjust procedures may well undermine public perception of the proceedings."

Mr. Carmona continues to suffer from deportation that he did not know would happen if he pleaded guilty before this court.  Mr. Carmona suffers from the loss of his family and from the real potential for harm or loss of life were he required to remain in **Dominican Republic.**  THIS NEEDS TO ALSO GO INTO CARMONA'S SWORN DECLARATION

At least as early as 1922, American courts have characterized deportation as a "loss of all … that makes life worth living" that will permanently and irreparably alter a person's life. *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922). The result of the conviction and sentence in this Court persists even though Mr. Carmona has served the custodial sentence and periods of supervisory release, but the power still exists with the Court to remedy the constitutional violations of such magnitude as to have deprived Mr. Carmona of due process and a fair trial.  See, *United States v. Morgan*, 360 U.S. 502 (1954), *Foont v. United States*, 93 F.3d 76 (2nd Cir. 1996). The United States Congress recognized that, with one exception, deportation is not an acceptable consequence where an alien's life or freedom would be threatened by deportation. See, 8 U.S.C. § 1253 (h) (1992).  Congress also has recognized that deportation should be prohibited to avoid physical harm, severe economic disadvantage and deprivation of liberty, food, housing, employment or other essentials of life.  See *Amending the Immigration and Nationality Act,* H.R. REP. NO. 1452, 95th Cong., 2d Sess. 5 (1978).  In 2015, there seemed to be a congressional

desire to see that the interests of deportable aliens were not abandoned in our country—under present suggestions of immigration enforcement, that might no longer be the congressional intent motivating reform, but Mr. Carmona cannot believe that even this Congress would abrogate the spirit of immigration law that helped create such a diverse and mighty nation.

## INEFFECTIVE ASSISTANCE OF COUNSEL:

## ARGUMENT:

### MR. CARMONA DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL FROM HIS TRIAL COUNSEL.

**a.** The Sixth Amendment requires that criminal defendants receive competent counsel at all critical stages of the criminal proceeding.

**b.** Effective assistance of counsel requires accurate advice of the immigration consequences of going to trial, and Mr. Carmona's attorney failed to render accurate advice of the consequences of conviction in a criminal proceeding involving a crime considered an aggravated felony.

**c.** Mr. Carmona was prejudiced.

**d.** Mr. Carmona's attorney, Ms. O'Connor, was representing Mr. Carmona while suffering under a fatal conflict, and she did not represent Mr. Carmona effectively.

A defense lawyer's responsibility at pre-trial and trial proceedings is simple: He or she is required to be fully aware of the law, facts and consequences of his client's decisions in order to argue and obtain the best possible results for his client. This was not done here. In this case, Mr. Carmona's counsel failed to perform acts favorable to his defense and provided incomplete and/or incorrect legal advice to him that Mr. Carmona relied on to his detriment.

The Sixth Amendment requires that criminal defendants receive competent and effective counsel at all critical stages of the criminal proceeding. *Strickland v. Washington*, 66 U.S. 668 (1984); *Moore v. Zant*, 885 F.2d 1497, 1511 (11th Cir. 1989). Counsel's performance is deficient if counsel made errors so egregious that he or she was not functioning as counsel guaranteed under the Sixth Amendment. *Strickland v. Washington*, *supra*. To establish that counsel was ineffective, the burden is on the petitioner to show that he was prejudiced by the deficient performance of his counsel. *Id.* To prove prejudice, a petitioner must show that there is a reasonable probability that the outcome would have been different but for his counsel's unprofessional errors. *Id* at 694. Therefore, a determination of the prejudice prong of the *Strickland* analysis necessarily is dependent on a review of the merits of the underlying claim. See, *Cross v. United,* 893 F.2d 1287, 1290 (11th Cir. 1990).

The "benchmark" for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process" that there is a question of whether there was any "just result." *Strickland v. Washington*, *supra* at 686.  In this case, Mr. Carmona has demonstrated that his counsel's acts were prejudicial to Mr. Carmona's rights and were the consequence of  Fifth, Sixth and Fourteenth Amendment violations. For example, see, *United States v. Leonti*, 326 F.3d 1111 (9th Cir. 2003) (the failure of an attorney to assist a client with cooperation with the Government can be considered ineffective assistance of counsel); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (counsel have a duty to supply criminal defendants with necessary and accurate information).

The Court in *Strickland* noted that counsel in any criminal case has certain basic duties. These duties include: a duty of loyalty, a duty to avoid conflicts of interest; a duty to advocate the defendant's cause, a duty to consult with the defendant on important decisions and to keep the defendant informed of important developments in the case as well as a duty to apply "such skill and knowledge as will render the trial a reliable adversarial testing process." *Id* at 6.

Effective assistance of counsel requires accurate advice regarding the immigration consequences of going to trial, and Mr. Carmona's attorney failed to render accurate advice of the consequences of conviction in a criminal proceeding

involving crimes of moral turpitude and/or that are considered aggravated felonies. Certain crimes involving drugs fall with definitions both of moral turpitude and aggravated felony.

Mr. Carmona's counsel failed in the adequacy of his representation in a few areas, including but not limited to: (1) she failed to obtain an interpreter at all times to make certain that Mr. Carmona understood all that she needed to say to him; (2) she failed to make certain that Mr. Carmona completely understood the immigration consequences of going to trial versus pleading guilty and (3) she failed to advise Mr. Carmona of the full scope of the legal proceedings and of options (perhaps a plea to charges that would fall within the "petty offense exception") that might have been available to him to avoid conviction on an aggravated felony and/or crime of moral turpitude.

No attorney should be less than fully up to date on his/her educational knowledge when taking on any case involving a non-citizen client with a charge comprising an INS crime considered a crime of moral turpitude and/or an aggravated felony. Crimes of moral turpitude "refer generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general." *In re Danesh*, 19 I. & N. Dec. 669, 670 (B.I.A. 1988) (The phrase "crimes of moral turpitude" is not defined within the INA but, instead, is

defined by the Board of Immigration Appeals ("BIA"), which is the highest administrative body for interpreting and applying immigration law).   Crimes of moral turpitude include those with elements of fraud, larceny, or intent to harm persons or things, such as arson, blackmail, perjury, tax evasion, kidnapping, <u>certain drug crimes</u> and prostitution. (Emphasis added).  See, 9 U.S. DEP'T OF STATE, FOREIGN AFFAIRS MANUAL § 40.21(A) n.2 (2005).

Aggravated felonies include common aggravated felonies such as murder, rape, sexual abuse of a minor and <u>most drug offenses</u>. (Emphasis added).  See, INA § 101(a) (43) (A), 8 U.S.C. § 1101(a) (43) (A).    With the passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the definition of "aggravated felony" was expanded in 1996, and the aggravated felony category now also encompasses crimes that are neither aggravated nor felonies.  See INA § 101(a) (43) (G), 8 U.S.C. § 1101(a) (43) (G).  For example, crimes of violence for which the term of imprisonment is at least one year are considered aggravated felonies.  13 INA § 237(a)(2)(B), 8 U.S.C. § 1227(a) (2) (B).  A defense attorney dealing with these issues must be educated as to the immigration consequences of a plea to or conviction for a crime of moral turpitude and/or aggravated felony as well as be knowledgeable regarding crimes considered petty offense exceptions— especially when negotiating a plea agreement where the 'amount' of the drugs can

mean deportation or being able to remain in this country.  Where the criminal activity

in the case only minimally comes within the definitions mentioned above, or where

there are strong mitigating circumstances or evidence of a defendant's disabilities

that raise questions of fairness and due process, as in the case of Mr. Carmona, an

attorney must investigate other options and advise his client in every instance.  If a

prosecutor and a defendant agree to cooperation with the United States Attorney's

Office  and  the  defendant  provides  information  about  his  co-conspirators,  the

defendant  may  be  able  to  plead  guilty  to  lesser  offenses  and  avoid  deportation.

However, owing to the INA's definitions of "conviction" and "aggravated felony,"

the defense attorney also must know that  pleading guilty even to such lesser offenses

would trigger the mandatory deportation requirements of the INA unless any term

of imprisonment for the defendant is less than one year.  The record shows that Ms.

O'Connor fell very far short of his duties in this regard.

It is essential for this Court to consider all that has been said here and that is

contained in the record of this case, and to apply the rules that govern both lawyers

and courts, alike.  In all stages of criminal proceedings, defense counsel must advise

their clients of the immigration consequences to non-citizens when the "immigration

consequences are clear." *Padilla v. Kentucky*, 130 S.Ct. 1473, 1483 (2010).  This

mandate extends to counsel during pre-trial and trial portions of a case, and it clearly

extended to Mr. Carmona's attorney.  In Mr. Carmona's situation, the failure of his

attorney to adequately advise Mr. Carmona and to assure that Mr. Carmona understood the full consequences of conviction <u>before</u> conviction and <u>before</u> the sentencing proceeding when it was too late for such education, constituted ineffective assistance of counsel.

Historically, in 2010, the Supreme Court decided *Padilla*, which held that criminal defense attorneys were obligated to inform their clients when a conviction would result in their deportation. In *United States v. Bonilla*, 637 F.3d 980 (9th Cir. 2011), the Ninth Circuit applied *Padilla's* holding. *Bonilla* was an appeal from a motion to withdraw a guilty plea, and its reading of *Padilla* is helpful in Mr. Carmona's case:

> Addressing the responsibility of criminal defense counsel to advise clients about immigration consequences, *Padilla* held, first, that because of the "unique nature of deportation" and "recent changes in our immigration law [that] have made removal nearly an automatic result for a broad class of noncitizen offenders," "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." 130 S.Ct. at 1481-82. Next, *Padilla* defined the scope of a criminal defense attorney's duty to advise is non-citizen client about the immigration consequences of a guilty plea [or, Mr. Carmona contends, the duty extends as well to conviction after any proceeding, plea or trial]:

> When the law is not succinct and straightforward…a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear. *Id*. at 1483. It is quintessentially the duty of counsel to provide his [his] client with

available advice about an issue like deportation and the failure to do so "clearly satisfies the first prong of the *Strickland* analysis." *Id*. at 1484 (footnote omitted). *Bonilla*, 637 F.3d at 983-84.

Here, as in *Padilla*, "counsel could have easily determined that [Mr. Carmona's conviction]…would make [him] eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all…[aggravated felonies and crimes of moral turpitude]." *Padilla*, 130 S.Ct. at 1483. A minimal amount of research or consultation with an immigration attorney would have revealed that any conviction under the charges against Mr. Carmona would result in Mr. Carmona's deportation.

Research enforces the conclusion that a substantial number of cases relating to this issue come from the Ninth Circuit United States Court of Appeals which handles appeals from district courts in border states—C California, Alaska, Oregon, Idaho, Montana, Hawaii, Nevada and Arizona. For example, in the case of *United States v. Rodriguez-Vega*, ___ F.3d. ___, 13-56415 (9th Cir. 8/14/2015), the court vacated a conviction for misdemeanor attempted transportation of illegal aliens. In addition to other infirmities, the panel held that Rodriguez-Vega's counsel was ineffective in failing to advise his that his plea agreement rendered his removal from the United States a virtual certainty. The panel also held that the district court applied the wrong legal standard in deciding whether his counsel's representation fell below an objective standard of reasonableness because the law "was clear on the

immigration consequence of a defendant's plea where the immigration statute expressly identified defendant's conviction as a ground for removal, rendering his removal practically inevitable." The panel also ruled that Rodriguez-Vega's counsel's statements made after Rodriguez-Vega already had pleaded guilty did not satisfy his attorney's duty to accurately advise Rodriguez-Vega of the removal consequences of the plea before she entered into it. The panel further held that Rodriguez-Vega satisfied the prejudice prong of the ineffective assistance of counsel test by showing a reasonable probability that, like Mr. Carmona, but for counsel's deficient performance, she would have negotiated a different plea agreement not requiring his removal or, alternatively, would have gone to trial. The Court of Appeals vacated Rodriguez-Vega's conviction and remanded the case to the district court.

Like Mr. Carmona, Rodriguez-Vega was declared "removable" because his conviction qualified as an aggravated felony under 8 U.S.C. § 1227(a) (2) (A). Citing to *Padilla v. Kentucky*, the Ninth Circuit opined:

> When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). However, where the law is "succinct, clear, and explicit" that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty. *Id.* at 368-69 ("[W]hen the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear."); *United States v. Bonilla*, 637 F.3d 980, 984

(9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea [or a finding of guilt] could lead to removal; he is entitled to know that it is a virtual certainty.")  Where the immigration statute or controlling case law expressly identifies the crime of conviction as a ground for removal, "the deportation consequence is truly clear." *Padilla*, 559 U.S. at 369. Here, as in *Padilla* and *Bonilla*, the immigration statute expressly identifies Rodriguez-Vega's conviction as a ground for removal.

The Ninth Circuit also cited to *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) for the rule that "[i]t is quintessentially the duty of *counsel* to provide his client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'" (emphasis added).  See also *Libretti v. United States*, 516 U.S. 29, 50-51 (1995); *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014).  In Mr. Carmona's case, the Court failed utterly to address the issue of deportation.  The Court said nothing about deportation at Mr. Carmona's sentencing; Mr. Carmona's attorney said nothing about deportation; and, at the time of the sentencing hearing, even if either the Court or Ms. O'Connor, or both, then provided Mr. Carmona with an explanation of the immigration consequences of his conviction, it would have been far too late for Mr. Carmona to benefit from that education.  In the *Rodriguez-Vega* case, *supra*, the court said that "counsel's statements made after Rodriguez-Vega had already pleaded guilty [or been convicted, in Mr. Carmona's case], that she faced a "high likelihood" of removal, did not satisfy his duty to accurately advise his client of the removal

consequences of a plea *before* she enters into it." (emphasis added). The Ninth Circuit cited to *Padilla*, 559 U.S. at 364: "*Before* deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel'" (emphasis added); *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012)." Like Mr. Carmona who suffered the same absence of meaningful and accurate advice, "had she been properly and timely advised, Rodriguez-Vega could have instructed his counsel to attempt to negotiate a plea that would not result in his removal. See *Padilla*, 559 U.S. at 373."

What Mr. Carmona could have benefitted from, or at least not suffered from as a result of its absence, was counsel who possessed the most rudimentary understanding of the deportation consequences of a particular criminal offense—one who might have been able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduced the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggered the removal consequence." *See Vartelas v. Holder*, 132 S.Ct. 1479, 1492 n. 10 (2012) ("Armed with knowledge that a guilty plea would preclude travel abroad, alien [defendants] might endeavor to negotiate a plea to a non-excludable offense"); *see also Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1110-11 (9th Cir. 2011) (discussing a plea agreement in which "[t]he state secured convictions on the charges that are punished more harshly under state law without incurring the expense and hassle of

a trial," and the defendant "agreed to plead guilty to a charge that, although more serious, had a smaller chance of causing adverse immigration consequences").

The Rodriguez-Vega panel continued: "In order that the benefits [of plea bargaining] can be realized, however, criminal defendants require effective counsel *during* plea [pre-trial] negotiations. Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." … *Missouri v. Frye*, 132 S.Ct. 1399, 1407-08 (2012).  As pointed out in *Rodriguez-Vega*, *supra*, perhaps the most perfectly succinct analysis of the requirement was provided by United States District Judge for the Northern District of Florida, Robert L. Hinkle, in *United States v. Choi*, Case No. 4:08-CV-00386-RH, Transcript, Docket No. 96 at 52 (D. Fla. Sept. 30, 2008) who explained, "**Well, I know every time that I get on an airplane that it could crash, but if you tell me it's going to crash, I'm not getting on**." (Emphasis added).

**STEVE/RAY – GOT TO MAKE SURE THAT CARMONA'S SWORN DECLARATION HITS EVERY ONE OF THE FOLLOWING POINTS PLUS TALKS ABOUT HIS RELATIONSHIP WITH HIS FAMILY, ETC. Family visits once a year in the Dominican Republic, Mr. Carmona misses children's birthdays, holidays, school activities, etc. ages 17, 15, 8, and 12.** To prevail on this petition, Mr. Carmona must establish prejudice.  Namely, Mr. Carmona must show that there is a reasonable probability that, but for the errors and lack of

educated and thorough advice from his attorneys regarding the immigration consequences of conviction, Mr. Carmona would not have pleaded guilty. *Iaea*, 800 F.2d at 865 (quoting *Hill v. Lockhart*, 106 S.Ct. 366, 370 (1985). Mr. Carmona has asserted in his Sworn Declaration that had he been advised properly by Ms. O'Connor, he would have insisted that Ms. O'Connor speak to an attorney who specialized in immigration law, and Mr. Carmona would have insisted on every effort being made to negotiate a plea agreement that did not contemplate convictions for aggravated felonies and/or crimes of moral turpitude. (Memorandum Exhibit D). Mr. Carmona's assertions in this, as set forth in his Sworn Declaration, "must be taken as true 'unless palpably incredible.'" *United States v. Leonti*, 326 F.3d 1111 (9th Cir. 2003) (quoting *United States v. Schaflander*, 743 F.2d 714 (9th Cir. 1984). See, *Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Herman v. Claudy*, 350 U.S. 116, 119 (1956); *United States v. Withers*, 638 F.3d 1055 (9th Cir. 2010). Mr. Carmona clearly meets this requirement based on the factual statements contained in his Sworn Declaration.

To demonstrate prejudice in *Rodriguez-Vega*, the defendant cited "four recent cases from the Southern District of California in which defendants originally charged with Transportation of Illegal Aliens in violation of 8 U.S.C. § 1324 pleaded guilty to being an accessory after the fact in violation of 18 U.S.C. § 3.[fn7]." The court noted that the cited cases demonstrated "a reasonable probability that, but for

counsel's deficient performance, Rodriguez-Vega could similarly have negotiated a different plea agreement not requiring his removal…." See, *United States v. Raya-Vaca*, 771 F.3d 1195, 1209 (9th Cir. 2014) (statistical evidence regarding proportion of aliens receiving relief in conjunction with individualized evidence supports finding of a plausible basis for alien's relief). The court concluded: "We have found prejudice where a non-citizen demonstrates clearly that she placed a "particular emphasis" on the immigration consequence" in deciding whether to accept a plea or proceed to trial. *United States v. Kwan*, 407 F.3d 1005, 1017-18 (9th Cir. 2005) (*abrogated on other grounds by Padilla*, 559 U.S. 356). However, as established by *Padilla, supra*, such a decision must be based on a full and detailed understanding of the consequences of his decision.

## CONFLICT OF INTEREST OF MS. O'CONNOR:

This Court may consider actions taken, or not taken, by Ms. O'Connor during his representation of Mr. Carmona that demonstrate that she was representing Mr. Carmona while suffering under a fatal conflict, and she did not represent Mr. Carmona effectively.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, and effective assistance includes a right to counsel's undivided

loyalty "unimpaired by conflicting loyalties." *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970); <u>*Duncan v. Alabama*, 881 F.2d 1013, 1016 (11th Cir.1989)</u>. The duty of unfettered loyalty to one's clients is among the most central of a criminal defense attorney's responsibilities. *Strickland v. Washington*, 66 U.S. 668, 692 (1984); *Moore v. Zant*, 885 F.2d 1497, 1511 (11th Cir. 1989).

The Supreme Court articulated the standard for reviewing a Sixth Amendment claim of ineffective assistance of counsel based upon an alleged conflict of interest in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). To establish a Sixth Amendment claim based upon a conflict of interest, a criminal defendant must show "that an actual conflict of interest adversely affected his lawyer's performance." *Id* at 350. *Accord Freund v. Butterworth*, 165 F.3d 839, 870 (11th Cir. 1999) (*en banc*). "Prejudice is presumed" if the petitioner demonstrates that an actual conflict of interest adversely affected his lawyer's performance. *Strickland*, 466 U.S. at 692.

Because the Supreme Court has held that, "[a]n actual conflict for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance," if a defendant's attorney represented the defendant and a testifying witness against the defendant, and the defendant can establish that the two representations created a conflict of interest that adversely affected the attorney's

38

representation of the defendant, then the defendant is entitled to a new trial under the Sixth Amendment. *Mickens v. Taylor*, 535 U.S. 162, 172 n. 5 (2002), *E.g., Lombardo v. United States*, 222 F.Supp.2d 1367, 1384 (S.D. Fla. 2002). In the instant case, substantial questions of conflict arise from the record, including but not limited to, questions as to Ms. O'Connor's intimate romantic relationship with a police officer who was involved in the case.

The Supreme Court has commented that, in some categories of cases, prejudice will be presumed. One such category where prejudice will be presumed is where counsel is laboring under an actual conflict of interest:

> In these circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of the trial court to make early inquiry in certain situations likely to give rise to conflicts…it seems reasonable to maintain a fairly rigid rule of presumed prejudice for conflict of interest.

*Strickland*, citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-350 (1980).

Ineffective assistance of counsel claims in the context of conflicts of interest are governed by the standard articulated by the Supreme Court in <u>Cuyler</u> and established a two-part test that the courts use to evaluate whether an attorney is constitutionally ineffective owing to a conflict of interest. To show ineffectiveness under *Cuyler*, a petitioner must demonstrate: (a) that his defense attorney had an

actual conflict of interest, and (b) that this conflict adversely affected the attorney's

performance. See *Cuyler, id at* 348-49, 100 S.Ct. 1708. In the case of *Reynolds v.*

*Chapman*, 253 F.3d1337, 1347-48 (11th Cir. 2001), the Eleventh Circuit said

> *Cuyler* further requires that a petitioner that has demonstrated an actual
> conflict show that the conflict "adversely affected" his lawyer's
> performance. … Reynolds need not show that the outcome of the
> proceeding would have been different had Hankins made the arguments
> in question. He merely must demonstrate that his attorney's conflict of
> interest had an effect upon the representation that he received. See
> *Lightbourne,* 829 F.2d at 1023. ("Once a defendant satisfies both
> prongs of the *Cuyler* test, prejudice is presumed and the defendant is
> entitled to relief.")

Earlier, in *Baty v. Balkom*, 661 F.2d 391, 396 (5th Cir. 1981), the Fifth Circuit

construed *Cuyler* as "not requiring proof of adverse effect on counsel in addition to

proof of an actual conflict of interest." Accordingly, "prejudice must be presumed,

and except under the most extraordinary circumstances, the error cannot be

considered harmless." *Id* at 395. The Eleventh Circuit expressly adopted this

construction in *Barham v. United States*, 724 F.2d 1529, 1531 (11th Cir. 1984),

holding that "[t]he threshold issue is whether there is an actual conflict; for if so

prejudice will be presumed."

In *Ford v. Ford*, 749 F.2d 681 (11th Cir. 1989), the Eleventh Circuit addressed

the question of whether a petitioner whose counsel had a conflict of interest could

enter a valid plea of guilty. Although, at first glance, this case may not seem

appropriate in a situation where the petitioner went to trial, nevertheless, the facts behind Mr. Carmona's decision to go to trial make the case a proper one for this Court's consideration. In *Ford*, the court first noted the holding in *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983) that a guilty plea cannot have been knowing and voluntary, if a defendant does not receive reasonably effective assistance of counsel in connection with the decision to plead guilty (<u>no different from a defendant's decision to go to trial</u>) because the … [decision] does not then represent an informed choice. (Emphasis added). Thus, where the court has determined that the petitioner's counsel represented conflicting interests, the petitioner has been deprived of effective assistance of counsel, and his guilty decision, his election of trial versus plea, cannot have been knowing or voluntary or the product of an informed choice. See, *Ford*, *supra* at 683.  In light of the facts, Mr. Carmona received ineffective assistance of counsel, suffered prejudice and, based on the facts, has met all of the criteria of *Strickland*. See, *Thompson v. Wainwright*, 784 F.2d 1103, 1105 (11th Cir. 1986).

**NEEDS CERTIFICATE OF SERVICE AND STEVE'S NAME, ETC.**